## ELISHA STRONG, Petitioner, &c.

Under Revised Stat. *c.* 14, which provides that in the election of county commission-
ers the voters of each town shall bring in their written votes on one ballot for three
county commissioners, being all of different towns in the county, and that not more
than one commissioner shall be chosen from one town, the names of the towns in
which the candidates live, need not be expressed on the ballots : so that a candi-
date was held to be elected, although in order to give him a majority of the votes
it was necessary to count both those containing his name simply and those on
which the name of the town was subjoined to his name.

Where the petitioner was elected a county commissioner, but the board of examiners
refused to give him a certificate of his election, and ordered a new election, at
which another person was elected, it was *held*, that a mandamus would lie to the
board of examiners to compel them to give the petitioner a certificate ; though he
might likewise be obliged to resort to a *quo warranto*, to remove the incumbent
chosen at the second election.

Before proceeding to hear the parties on the petition for a mandamus, the Court di-
rected that notice of the application should be given to such incumbent.

THE petition, dated August 9, 1838, sets forth, that at the late election of county commissioners for the county of Hampshire, the petitioner, Elisha Strong of Northampton, in the same county, was duly chosen one of the county commissioners for the three years then next ensuing ; that the whole number of votes return-ed to the board of examiners for the county, for three coun-ty commissioners, was 1956, of which number there were re-turned for the petitioner 1086 ; that at such election no other person residing in Northampton was chosen a county com-missioner or a special commissioner ; that the board of examin-ers refused to give the petitioner written notice of his election

but, on the contrary, issued their warrant for another election; that, for years preceding the election, the petitioner, having been duly chosen and qualified, had acted as one of the county commissioners; that he was the only person bearing the name of Elisha Strong, that was put in nomination as a candidate for the office; that all the votes given for Elisha Strong were intended to be given for the petitioner, and that since the election he has made diligent inquiry and is unable to ascertain that any other person bearing his name did, at that time, reside within the limits of the county; that the board of examiners consisted, at the time of the election, and still consists, of Ithamar Conkey, judge of probate, Samuel Wells, clerk of the Court of Common Pleas, and Samuel F. Lyman, register of probate; and that by reason of their acts and omissions the petitioner is aggrieved; wherefore he prays this Court, that he may be declared duly elected one of the county commissioners, and that a writ of mandamus may be issued to the board of examiners, commanding them to find him duly elected as such commissioner, and also to give him written notice of his election in due form of law.

To this petition the board of examiners answer and return, that the matters contained in the petition are not sufficient in law for the petitioner to have or maintain a writ of mandamus against them.

They further certify and return, that the petitioner was not duly chosen one of the county commissioners, because they examined the returns transmitted to them from the several towns in the county, and found that the whole number of votes returned was 1956 and that 979 were necessary for a choice; that for Joseph Cummings of Ware there were cast 1476 votes; for Chauncey B. Rising of Worthington, 671; for Elisha Strong of Northampton, 929, &c.; for Elisha Strong, 157, &c.; from all which votes the aggregate number 1956 was obtained; that Joseph Cummings of Ware, having a majority of all the ballots, was duly chosen county commissioner and so declared, and that no other person was chosen, or received a majority of all the ballots, Elisha Strong of Northampton having received 929 votes, and 979 votes being necessary for a choice; that the examiners issued their warrants for an election to be made on the 9th of May, 1838, of as many

commissioners as were necessary to complete the number ιe quired by law ; that an election took place accordingly, at which Chauncey B. Rising of Worthington, and Roswell Hubbard of Northampton, were chosen ; and that Cummings, Rising and Hubbard, immediately after this election, severally received notice of their election and were thereupon duly sworn to the faithful discharge of their official duties, and ever since have discharged the duty of county commissioners ; wherefore the respondents cannot give the petitioner a written notice of election, nor ought they to declare him duly elected.

The petitioner excepts to the return, for the following reasons :

1. It neither admits nor denies the allegation in the petition, that there were returned for the petitioner 1086 votes ; 2. Nor the allegation, that no other person residing in Northampton, except the petitioner, was chosen a county commissioner or a special commissioner ; 3. Nor the allegation, that the petitioner, previously to the election in question, having been duly chosen and qualified, had acted as one of the county commissioners for the county ; 4. Nor the allegation, that the petitioner was the only person bearing the name of Elisha Strong, that was put in nomination as a candidate for the office of county commissioner or was residing in the county ; 5. Nor the allegation, that all the votes given for Elisha Strong were intended to be given for the petitioner ; 6. The return contains no direct denial of the election of the petitioner ; the statement, that excepting Cummings, " no other person was chosen county commissioner at said election nor received a majority of all the ballots, Elisha Strong of Northampton having received 929 votes and 979 votes being necessary for a choice," being argumentative and containing only a negative pregnant upon which no direct issue can be taken. Wherefore the petitioner prays that the return may be quashed, and that a peremptory mandamus may be issued, according to the prayer of his petition.

The petition, return and exceptions having been read, the chief justice suggested that notice of the petition ought to be given to Rising and Hubbard, the newly elected commissioners, as their rights might be affected in case a mandamus should be granted ; and the Court ordered notice accordingly

*Forbes*, in support of the petition. The question is, whether the law requires that, after the names of the candidates, on a ballot for county commissioners, shall be added the names of the towns in which they respectively reside. The Revised Stat. *c*. 14, § 17, prescribes, that the voters " shall bring in their written votes on one ballot for three county commissioners, being all inhabitants of different towns in the county ; " recognising residence as one of the qualifications of the candidate. But it does not require that this qualification, any more than various others, shall be expressed on the ballot. Revised Stat. *c*. 6, § 15. Nor can there be any practical difficulty, in ascertaining the individual for whom the votes are given, even when several persons in the county bear the same name. Further, the town clerk is required " to enter in the town records the names of all the persons voted for, and the number of votes for each, and the whole number of ballots," and a copy of such record is to be transmitted to the examiners. He is not obliged to enter the names of the towns, and if he omits them, confining himself to the letter of his duty, then, according to the views taken by the respondents, the election must be wholly invalid. The ballots for Elisha Strong, without the name of the town, were either legal or illegal ; if legal, then the petitioner had a majority of the whole number of ballots ; if illegal, they should have been rejected for all purposes, and then he had a majority of the legal ballots ; and in either case he was duly elected and entitled to a certificate to that effect.

*I. C. Bates* and *Huntington*, for the respondents. A *mandamus* is not grantable in this case. The office is full, and the petitioner's proper remedy is a *quo warranto.* *The People* v. *Brooklyn*, 1 Wendell, 325 ; *The People* v. *Superior Court of New York*, 5 Wendell, 122 ; Bac. Abr. *Mandamus, C* 2 ; *The King* v. *Abp. of Canterbury*, 8 East, 213 ; 6 Dane's Abr 320, 322, 331, 360 ; Com. Dig. *Mandamus, B* ; *Rex* v. *Bankes*, 3 Burr. 1453 ; 1 Chit. Gen. Pract. 796 ; 4 Cowen, 101, note ; *The People* v. *Hillsdale &c. Turnp. Co.* 2 Johns. R. 190 ; *Giles's Case*, 2 Str. 881 ; *Rex* v. *Colchester*, 2 T. R. 259 ; 2 Chit. Gen. Pract. 367 ; *Commonwealth* v. *Athearn*, 3 Mass. R. 285 ; *Commonwealth* v. *Fowler*, 10

Mass. R. 290 ; *Rex* v. *Goudge*, 2 Str. 1213 ; *The People* v. *Bartlett*, 6 Wendell, 422 ; *The King* v. *Clarke*, 1 East, 38 ; *The People* v. *Loomis*, 8 Wendell, 396 ; *The People* v. *Richardson*, 3 Cowen, 357 ; *The People* v. *New York*, 3 Johns. Cas. 79.

A mandamus does not lie, because the duty of the examin ers in the matter in question is of a discretionary and judicia' nature.    They are the judges of the election, and their decis ion is final. Revised Stat. *c.* 14, § 18, 38 ; *c.* 4, § 13 ; *Chase* v. *Blackstone Canal Co.* 10 Pick. 244 ; *The King* v. *Abp. of Canterbury*, 8 East, 213 ; *The King* v. *Middlesex*, 4 Barn. & Ald. 298 ; 1 Chit. Gen. Pract. 796 ; *Goff* v. *Fowler*, 3 Pick. 300 ; *Marbury* v. *Madison*, 1 Cranch, 137, 169.

The petition does not contain allegations sufficient to entitle the petitioner to the office.    It does not aver, as it should do, that all the proceedings mentioned in Revised Stat. *c.* 14, § 17, were had ; nor that the 1086 votes for Elisha Strong were legal votes ; nor that the petitioner was an inhabitant of Northampton at the time of the election, but he is merely called " of Northampton," that is, in August, the date of the petition ; Revised Stat. *c.* 14, § 23 ; nor that no other person in the same town had a majority of the votes, or as many votes as the petitioner, which should have been averred, for if the same number of votes were cast for two persons in the same town, neither could take the office.    Every fact stated in the petition may be true, and yet the petitioner may not have been elected.    Bac. Abr. *Mandamus, Introduction, and letter A* ; *The King* v. *Bp. of Oxford*, 7 East, 345, 349 ; Com. Dig. (Hammond's edit.) *Mandamus, C*, note *r* ; 1 Chit. Gen. Pract. 798, 808, and authorities there cited ; Bull. N. P. 200.

The examiners adopted the right mode of counting the votes.    The provision in Revised Stat. *c.* 14, § 17, as to bringing in " votes on one ballot for three county commission ers, being all inhabitants of different towns in the county," is directory to the voters, and the provision in § 23, that in case more than one county commissioner from the same town shall have a majority of the ballots, the person having the largest number shall be declared to be elected, is directory to the examiners.    The examiners cannot go behind the returns, and

if the town is not specified, it must lead to confusion.   In the present case there are returns of votes for " Ephraim Smith of Hadley," " Ephraim Smith of Hatfield," and " Ephraim Smith."   How can the examiners determine who is meant by " Ephraim Smith " ?   If they can go out of the returns and inquire whether Elisha Strong means Elisha Strong of Northampton, why may they not in like manner inquire whether Chauncey B. Rising is not intended by Chauncey Rising ?

It is·said that the examiners should either have rejected all the votes on which the name of the town was not annexed to the name of the petitioner, or should have counted them as given for him.   An answer to this position is furnished by Revised Stat. *c.* 4, § 13 ; which requires that " the whole number of persons who voted shall be first ascertained, by counting the whole number of separate ballots given in ; and no person shall be deemed or declared to be elected, who shall not have received a majority of the whole number of ballots ; but blank pieces of paper shall not be counted as ballots."

The respondents set forth a subsequent election ; and this is a good return to a mandamus.   Com. Dig. *Mandamus, D* 3.   The offices of Rising and Hubbard are not to be vacated without a process against them.   If the petitioner succeeds in his object, we shall have four commissioners.

The return states substantially, that Strong was not elected, and this is a good answer to his petition.   They were not bound to deny that the votes for " Elisha Strong " were for the petitioner, and thus lay a foundation for an action against them for a false return.   It is sufficient that they have stated all the facts.

*Forbes*, in reply, said that the examiners were ministerial officers ; that whether *quo warranto* or mandamus were the proper remedy, was a question on which authorities might be cited on both sides ; that there was no doubt as to the facts, but simply a question of law, which might be decided on a mandamus ; *Rex* v. *York*, 5 T. R. 75 ; *Rex* v. *Bedford Level Corp.* 6 East, 367 ; *Case of Tintagel*, 2 Str. 1003 ; 3 Burr. 1454, note ; *Case of Aberystwith*, 2 Str. 1157 ; *Case of Scarborough*, 2 Str. 1180 ; *Howard* v. *Gage*, 6 Mass. R. 464 ; that this was not an application, like some of the cases cited,

directly to admit an officer, but to give him a certificate of his election ; that there was a time when mandamus was not only the proper, but the sole remedy, and the examiners had no right to order another election and then object that a mandamus will not lie because the office is full ; *Rex* v. *York*, 4 T. R. 699, and 5 T. R. 66 ; and that a judgment on a *quo warranto* would not put the petitioner into office, but would merely create a vacancy, (11 Mass. R. 239,) and the examiners would order a new election, by which the office would be filled again, and the petitioner would be met again by the same objections which are now urged against him.

*Sept.* 29*th.*      MORTON J. delivered the opinion of the Court. Two questions arise upon this application. First, was the petitioner duly elected and entitled to a certificate of his election ? Secondly, if so, has he resorted to the proper remedy for redress ?

In the examination of these questions we have looked directly to their legal merits. Fortunately we have not been diverted from this object, by any matters of form or technical difficulties. All parties interested have been duly notified and had full opportunity to be heard. The case has been thoroughly investigated, and ably argued on both sides. The petitioner has stated his claim with sufficient certainty and particularity ; and the answer of the examiners admits or states all the facts necessary to a correct decision. We shall therefore proceed immediately to the main questions, without taking further notice of the objections to matters of detail in the petition or answer.

1. Was the petitioner duly elected a county commissioner ? If he was, there can be no doubt that he was entitled to the usual evidence of the fact.

Although this question must depend mainly upon general principles, yet it may not be useless briefly to advert to the course of legislation in relation to the offices in controversy The powers now possessed by the county commissioners were at different times vested in the " General Sessions of the Peace," the " Court of Sessions," the " Common Pleas," and the " commissioners of highways." These different tribunals formerly exercised judicial authority, were deemed " judicial officers," and were appointed by the executive. But

these judicial powers had from time to time been so reduced and narrowed down, that in 1835 the legislature deemed it wise and constitutional to take their appointment from the governor and council and vest it in the people. *Stat.* 1835, *c.* 152. The provisions of this statute were included in the general revision in 1836, and so much as relates to the question before us will be found in three sections of the 14th chapter of the Revised Statutes.

The sixteenth section authorizes the election of county commissioners by the people.

The seventeenth establishes the times of holding meetings, for this purpose ; and regulates the mode of balloting, of counting, declaring, recording and returning the votes. It first prescribes the duty of the electors. It directs that each qualified voter shall vote for three persons, for county commissioners ; that the names of the three shall be borne on one ballot ; and that they shall be "*all inhabitants of different towns in the county.*" Whether these regulations are merely directory, or are conditions, on which the citizen's right to vote depends, — whether it would be the duty or the right of the selectmen to reject ballots having less than three names upon them, or having the names of more than one residing in the same town, — are questions, upon which we have no occasion to give an opinion. No objections have been made to the regularity of the meetings, the qualifications of the voters, or to the manner in which they exercised their elective franchise.

The section next prescribes the duty of the selectmen. They are required not only to preside at the meetings and receive the legal ballots offered, but in " open town meeting, to sort and count the votes and the ballots, to make public declaration thereof," and to verify the return by their signatures.

The section lastly prescribes the duty of the town clerk. He is to " enter in the town records the names of all the persons voted for, and the number of votes for each, and the whole number of ballots," and to transmit a copy of such record, duly authenticated and sealed up in open town meeting, to the clerk of the Court of Common Pleas.

What shall be the consequence of an omission by the select-

men or town clerk to perform any of these prescribed duties, and upon whom shall it fall ? For a wilful neglect of duty the officers would undoubtedly be liable to punishment. But shall the whole town be disfranchised, by reason of the fraud or the negligence of their officers ? This would be punishing the innocent for the faults of the guilty. It would be more just and more consonant to the genius and spirit of our institutions, to inflict severe penalties upon the misconduct, intentional or accidental, of the officers, but to receive the votes whenever they can be ascertained with reasonable certainty. If no return, or an imperfect one be received, let it be supplied or corrected by a reference to the original record, if any there be.

The eighteenth section prescribes the duty of the board of examiners. It is a plain, easy, and, in most respects, a mere ministerial duty. They are to examine the returns ; to ascertain if any persons have a majority of all the ballots returned : and if so, to give them " written notice of their election."

The examiners must necessarily determine the genuineness and legality of the returns. But in doing this, they ought to receive them with favor and construe them with liberality. From the men who usually are, and necessarily must be, employed to make them, great formality or nicety cannot be expected and should not be required. If the record, and the return, which is a copy of it, shows the whole number of ballots, the names of the persons voted for, and the number of votes given to each, it contains every thing that is material, and if duly authenticated, may safely be received as a valid return, in whatever form it may be made. And if the whole number of ballots be omitted, it would not seem to be a fatal defect. For if the selectmen can only receive ballots with the whole number of names upon them, then the number of votes given to each candidate, would enable the examiners to ascertain the exact number of ballots, and thus render a return of the whole number of ballots unnecessary. And if this be not so, it may be presumed that every voter conformed to the directions of the statute ; and thus the whole number might be ascertained with ease and sufficient accuracy and certainty. There is no doubt that the examiners acted correctly, in receiving the returns from all the towns in the county.

It will be seen by recurring to our analysis of the three sec‑ tions of the statute, applicable to this case, that the selectmen are not required to declare, or the town clerk to record, or both of them to return the residence, age or other qualifica‑ tions of the candidates voted for. Indeed this might be impos‑ sible, for the voter is not bound to describe, upon his ballot, the qualifications of the person named on it. Town officers cannot be holden to go beyond the directions of the statute or make their records and returns more specific and particular than that requires.

If some of the returns added the residence of the candidates and others omitted it, the latter contained all that the statute demands and the former were not vitiated by including more. All the votes should be counted for the persons for whom they were intended whether designated by residence or other addi‑ tion or not. And if the persons having a majority were not ineligible, by reason of their residence, or other disqualifica‑ tion, they should be declared to be elected, and furnished with the proper evidence of that fact.

There seldom, if ever, will be any practical difficulty in as certaining the person intended to be voted for. Many circum‑ stances will always concur to identify him. Even where there are several of the same name, it will not often happen that any doubt will arise, as to the person intended to be designated by the votes and by the returns. The only object should be to ascertain the expressed will of a majority of the electors. And with this in view and with the guidance of good practical sense, unfettered by technical rules and nice distinctions, there will be no danger of mistaking the voice of the electors. When, formerly, a majority of the electors of the Common‑ wealth voted for John Brooks, and, more recently, for John Davis for governor, either with or without a designation, no‑ body could doubt who was intended, although there were sev‑ eral of the same name in the Commonwealth, who were eligi‑ ble to the same office. Nothing could have been more un‑ just or subversive of the fundamental principle of our govern‑ ment, than to have defeated the elections of these distinguished citizens, by dividing the votes given for them, because some of them were given and returned with the addition of residence and others without it.

In the case before us, the examiners as sensible men, could not have doubted that all the votes returned for Elisha Strong, whether with or without the place of his residence, were intended for the same person, and had they not felt themselves bound by the letter of the returns and the construction which they put upon the statute, would undoubtedly have given him a certificate. We think they put too strict a construction upon the statute and upon the returns. The latter are only evidence of the will of the electors expressed by their ballots. If this evidence is such as to produce reasonable conviction of what that will is, it should be allowed to have its legitimate effect. But if they are so indefinite or ambiguous, in their descriptions of the persons voted for, that it cannot be ascertained that any person has a majority of all the suffrages, then the only proper course would be to send the matter back to the people, to give them an opportunity more clearly to express their will. But here was no reason to fear misapprehension. And to render it perfectly certain, it is made to appear that there was no person in the county by the name of Elisha Strong, other than the petitioner. This is expressly alleged in the petition, and is not denied in the answer.

There is another short view of this question, which is perfectly decisive and brings us to the same conclusion. If the designation of the residence is to be deemed an essential part of the return, and its omission a fatal error, then the returns with this omission, should have been rejected, as being too uncertain, and thus exposing the examiners to the absurd act of giving certificates to two or three persons, who were residents of the same town and not capable of holding the office. If the returns of this description be excluded, then Mr. Strong will have a majority. So that in any aspect of the case, he will be elected unless votes manifestly intended for him, be counted against him. This we think cannot be allowed. We are therefore of opinion that he was duly elected one of the county commissioners, and was rightfully entitled to a certificate of his election.

But it has been contended for the respondents, that the petitioner has mistaken his remedy, and that *mandamus* will not lie. It was said that his appropriate remedy, if he has

any, is by *quo warranto* and not by *mandamus*, or at any rate, that a *quo warranto* should precede a *mandamus*.

In every well constituted government, the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals, magistrates and all others exercising public authority. If they commit errors, it will correct them. If they refuse to perform their duty, it will compel them. In the former case by writ of error, in the latter by *mandamus*. And generally in all cases of omissions or mistakes, where there is no other adequate specific remedy, resort may be had to this high judicial writ. It not only lies to ministerial, but to judicial officers. In the former case it contains a mandate to do a specific act, but in the latter only to adjudicate, to exercise a discretion, upon a particular subject. *Springfield* v. *County Commissioners &c.* 10 Pick. 244.

Mandamus is the proper process for restoring a person to an office from which he has been unjustly removed. *White's Case*, 2 Ld. Raym. 959, 1004 ; *Regina* v. *Baines*, 2 Ld. Raym. 1265 ; *Rex* v. *Chancellor &c. of Cambridge*, ibid. 1334 ; *Rex* v. *London*, 2 T. R. 177 ; *Rex* v. *Field*, 4 T. R. 125. So also it lies to admit any one to an office, a service or a franchise from which he is unlawfully excluded. 6 Dane's Abr. 326 ; *Rex* v. *Surgeon's Company*, 2 Burr. 892 ; *Rex* v. *Barker*, 3 Burr 1265 ; *S. C.* 1 W. Bl. 300 ; *Rex* v. *Bedford Level Corp.* 6 East, 356 ; *Rex* v. *York*, 4 T. R. 699, and 5 T. R. 66.

But it is strongly argued by the respondents' counsel, that inasmuch as the office, claimed by the petitioner, is now filled by another, who can be removed only by a *quo warranto*, a *mandamus* will not lie. And, certainly, many of the authorities cited by them, support the position, that a *mandamus* will not lie to place one in an office actually filled by another, until the incumbent has been removed by a *quo warranto*. The case from 3 Johns. Cas. 79, *The People* v. *New York*, is directly in point. The court there say, that " where the office is already filled by a person who has been admitted and sworn and is in by color of right, a mandamus is never issued to admit another person." " The proper remedy, in the first instance, is by an information in the nature of a *quo warranto*, by which the rights of the parties may be tried."

But notwithstanding the respectability and weight of this and the other authorities cited, there certainly are very many the other way ; of which the case of *Dew* v. *The Judges of the Sweet Springs District Court*, 3 Hen. & Munf. 1, is one. Dew applied for a *mandamus* to the judges, to admit him to the office of clerk. It was objected among other things, that the office was already filled and the only remedy was by a *quo warranto* against the incumbent. But all the judges of the Supreme Court of Appeals of Virginia " agreed clearly, that *mandamus* was the best remedy." See also 6 Dane, 335, and the cases there cited. Mr. Dane, with whom we concur, says, " On the whole the authorities, English and American, are much in favor of the *mandamus*, especially the more modern cases.

But the cases relied upon by the respondents, if in nowise shaken or overruled, are clearly distinguishable from the one before us, and may stand as sound law, and yet form no obstacle to the petitioner's application. The cases referred to were applications to be *admitted* to an office. The petitioner only seeks for a *certificate* of his election. This, if he obtains it, will not necessarily oust the incumbent or give the petitioner possession of the office. For these purposes he may still have to resort to a *quo warranto*, and possibly before he can get qualified to another *mandamus*. Two processes may be necessary to enable the petitioner to get possession of the office, the one to establish the legality of his own election, the other to set aside that of the incumbent. They are independent of each other. Both might have been applied for at the same time and proceeded *pari passu*. Had the petitioner first caused the incumbent to be removed, by a *quo warranto*, still, without the evidence of his own election, he could not enter into the office. So if a mandamus be now issued and complied with, he may still be obliged to resort to other legal proceedings before he can get regularly inducted.

*The King* v. *The Mayor &c. of York*, 4 T. R. 699, and 5 T. R. 66, is analogous to the case at bar. An election of a recorder of the city of York was holden, and a certificate was given to Sinclair that he was duly elected. The certificate was to be presented to the king, for the purpose of

obtaining his approbation of the election. Withers, the other candidate, applied for a mandamus to the corporation to give him a certificate, he having, as he alleged, a majority of the *legal* votes, and his opponent having gained the election only by the votes of persons not qualified to vote. An alternative mandamus issued, and afterwards, the return to that being insufficient, a peremptory one was ordered. Many other cases to the same effect might be cited, but without a further reference to authorities we are clearly of opinion that a mandamus is the proper remedy in this case.

We are aware that this is not a writ of right, but grantable at the discretion of the Court ; *Rex* v. *Commissioners of Excise*, 2 T. R. 385 ; that inasmuch as it is final and cannot be revised, on error or otherwise, the Court will proceed with great caution in the exercise of so high a jurisdiction ; Selwyn's N. P. (6th edit.) 1062 ; 1 Chit. Gen. Pract. 791 ; and that they will not grant it, where there is any other adequate specific remedy. 1 Chit. Gen. Pract. 790 ; *Rex* v. *Bp. of Chester*, 1 T. R. 396 ; *Rex* v. *Abp. of Canterbury*, 8 East, 219. But we have no doubt that the present is a proper case for the exercise of our discretion ; and that to refuse to grant the writ would be doing palpable injustice to the petitioner, and defeating the will of a majority of the voters of the county, clearly manifested by their votes, duly and legally evidenced before the prope tribunal. No other remedy can reach the evil. Although a *quo warranto* might remove the illegal occupant, it could not put the legal officer in his place. No civil action could be maintained by the petitioner, because there is no reason to doubt, that the examiners acted *bonâ fide* and with a sincere desire to perform their duty correctly and legally. And if it could, it would be a very imperfect and partial remedy.

It cannot be maintained that the decision of the examiners was an act within their legal discretion. Whether their determination as to the reception or rejection of returns, would be deemed a *judicial* decision, may well be doubted. But nothing can be clearer than that the counting the votes, and ascertaining the majorities and giving certificates of the result, are mere ministerial acts. They have no *discretion* in deter-

Strong,
Petitioner
&c.

mining which of the candidates shall be elected. It must be the result of pure, inflexible mathematical calculation.

We are therefore all of opinion, that the petitioner, in first seeking to have the validity of his own election inquired into, pursued a wise and legal course, that the proper remedy is by mandamus, and that justice clearly requires that such a writ be issued. But the usual, if not invariable practice is, in the first instance to grant it in the alternative form, giving the examiners a further opportunity either to give the certificate or to return the reasons for refusing it. As the case has been fully heard, they will doubtless adopt the first branch of the alternative, unless facts or reasons occur to them which have not been presented to the Court.

*Alternative mandamus ordered.*

# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1838, AT WORCESTER.

PRESENT·

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL S. WILDE,
Hon. MARCUS MORTON, } Justices.
Hon. CHARLES A. DEWEY,